IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT N. WELLS,<br><br>    Plaintiff,<br><br>  v.<br><br>CAM XI TRUST, *et al.*,<br><br>    Defendants. | Case No. 16-cv-07380 JST<br><br>**ORDER GRANTING SECOND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND SETTING SCHEDULE**<br><br>Re: ECF No. 8 |

Plaintiff has filed an application for an ex parte temporary restraining order. ECF No. 8. For the reasons stated below, the application is GRANTED.

## I. BACKGROUND

### A. Factual History

Plaintiff Robert N. Wells is the mortgagor and resident of a home located at 151 Northcreek Circle, Walnut Creek, CA 94598. Non-party American Brokers Conduit was the original lender on Wells' mortgage loan, and defendant CAM XI Trust purports to have acquired an interest in the loan based on a chain of assignments that began in June 2011. American Brokers Conduit, however, ceased operations and closed on or before November 30, 2010.

In August 2016, CAM XI recorded a notice of default, which stated Wells owed $213,453.17. Wells acknowledges that he stopped paying his mortgage in June 2015, and he admits that he was "in arrears for approximately $29,400.00" but denies he owes the full amount of $213,453.17. ECF No. 8-4 ¶ 9.

In December 2016, Wells received a notice of trustee's sale, which set the date of sale for January 3, 2017, at 9:00 a.m. *Id.*, Exh. A.

### B. Procedural History

On December 29, 2016, Wells filed a complaint against CAM XI and another defendant, BSI Financial Services, which is the purported servicer of his loan, alleging wrongful foreclosure, breach of contract, and related claims, and seeking cancellation of the loan against his home and related relief. Wells asserts that American Brokers Conduit lacked authority to assign his loan in June 2011, which assignment began the chain of assignments ending with CAM XI, inasmuch as American Brokers Conduit had ceased operations prior to that date. Thus, he argues, the initial purported assignment and each subsequent assignment, was void, depriving defendants of authority to foreclose. ECF. No. 1.

The same day, Wells also filed an Ex Parte Application for Temporary Restraining Order to enjoin the pending foreclosure of his home, with a trustee's sale scheduled for January 3. An order denied that first application because Wells failed to allege any effort to give defendants notice of his TRO application or any reason why notice should not be required, pursuant to Rule 65(b)(1) and Civil Local Rule 65-1(b). That denial was without prejudice to a renewed motion that satisfied those requirements. ECF No. 7.

On December 30, Wells filed the instant second motion for a TRO, in which he alleged his counsel had faxed and emailed a letter to defendants containing the TRO papers. ECF No. 8-2.

For the reasons stated below, Wells's motion is GRANTED. Defendants are temporarily enjoined from conducting a trustee's sale of Wells's home.

### II. LEGAL STANDARD

The same legal standard applies to a motion for a temporary restraining order and a motion for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff seeking either remedy "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the

public interest." *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Resources Defense Council*, 555 U.S. 7, 20 (2008)).  The purpose of such a temporary restraining order is to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974).

### III.  DISCUSSION

This order finds that Wells has met his burden in requesting a temporary restraining order.  On the present record, Wells is likely to succeed on the merits of his claim that the initial assignment from American Brokers Conduit was void, he is likely to suffer irreparable harm, and the balance of equities and the public interest favor granting a temporary restraining order, at least where a bond is posted.

This order first takes judicial notice of certain facts that are necessary to Wells's motion, but absent from the sworn record.  It then addresses the *Winter* factors.

### A.  Judicial Notice

Wells did not submit a sworn statement supporting his contention that American Brokers Conduit, the original lender for the mortgage at issue here, ceased all operations and closed on November 30, 2010.  Nevertheless, the undersigned takes judicial notice of the fact that American Home Mortgage Corporation did business as American Brokers Conduit, and that American Home Mortgage Corporation was liquidated on or before November 30, 2010 pursuant to a plan of bankruptcy.  *See In re American Home Mortgage Holdings, Inc., et al.*, No. 07-11047 (Bankr. D.Del. Feb. 23, 2009) (Dkt. No. 7042); *id.* (Bankr. D.Del. Nov. 30, 2010) (Dkt. No. 9519).

### B.  Success on the Merits

The present record supports Wells's contention that CAM XI never acquired a valid interest in his mortgage and thus lacks authority to foreclose, inasmuch as the first assignment in that sequence occurred *after* the initial lender, American Brokers Conduit, had ceased operations and shut down.  Under *Yvanova v. New Century Mortgage Corporation*, a mortgagor may challenge a foreclosure based on allegations that assignments of the loan were void.  62

3

Cal. 4th 919, 939 (2016). Although *Yvanova* was limited to post-foreclosure claims, the undersigned has previously concluded that the California Supreme Court will likely extend *Yvanova* to pre-foreclosure claims. *See Lundy v. Selene Fin., LP*, 15-CV-05676-JST, 2016 WL 1059423, at *10 (N.D. Cal. Mar. 17, 2016). This order likewise assumes, solely for the sake of assessing the likelihood of success on the merits on this application for a temporary restraining order, that the California Supreme Court would extend *Yvanova* to pre-foreclosure challenges. For the avoidance of any doubt, this issue may be revisited at subsequent proceedings, including at the hearing following this order.

Accordingly, Wells has demonstrated a sufficient likelihood of success on the merits that the initial assignment of his loan was void. This order declines to address the merits of the balance of Wells's causes of action.

### C. Irreparable Harm

Wells has provided a declaration stating that he will suffer irreparable harm if an injunction is not granted. He avers that absent a temporary restraining order, he will lose his home. Although Wells has not stated that he would be homeless if forced out of this particular home, "[i]t is well-established that the loss of an interest in real property constitutes an irreparable injury." *Park Village Apt. Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1159 (9th Cir. 2011). Wells has satisfied this factor.

### D. Balance of the Equities and the Public Interest

This temporary restraining order will delay the trustee sale of the property for a short period of time, until the court can hold a hearing on a motion for a preliminary injunction, which will occur in less than two weeks. This brief delay of the sale for the purpose of allowing consideration of the issues herein with the benefit of full briefing does not overcome the irreparable harm that will occur if Wells loses his home.

This order acknowledges, however, that Wells filed his initial motion without giving notice to defendants on Thursday, December 29, and he filed the instant motion on Friday, December 30, effectively guaranteeing that defendants could not be heard either in writing or at a noticed hearing before the scheduled trustee's sale on Tuesday, January 3 (particularly given

4

that January 2 is a court holiday).  Wells knew of the trustee's sale, however, weeks earlier. Ordinarily, a "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."  *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985).  To offset any imbalance, this order will require Wells to post a bond in the amount of $29,400, which is the amount he admits is owed on his loan.

## CONCLUSION

For the reasons stated above and to the extent stated above, Wells's application for a temporary restraining order is **GRANTED**.  The order will *not* take effect unless and until a bond in the amount of $29,400 is posted with the Court registry by January 3, 2017 at 11:00 a.m.

This order sets the following briefing schedule.  Defendants shall respond to Wells's opening brief by **January 5, 2017** at 5:00 p.m.  Wells may reply by **January 9, 2017** at 5:00 p.m  The motion will be heard in Courtroom 7 on the 19th Floor at the Federal Courthouse at 450 Golden Gate Ave., San Francisco, on **January 11, 2017** at 8:30 a.m.

**IT IS SO ORDERED.**

Dated:   December 30, 2016

JON S. TIGAR
UNITED STATES DISTRICT JUDGE

5